IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MARIAN LISA HARUCH, | : | |
|---|---|---|
| Plaintiff, | | |
| v. | : | CIVIL ACTION NO. 17-0773 |
| NANCY A. BERRYHILL, *Acting Commissioner of Social Security* | : | |
| Defendant. | | |

FILED
AUG 08 2018
KATE BARKMAN, Clerk
By_____ Dep. Clerk

## MEMORANDUM

**Jones, II J.**                                                                    **August 8, 2018**

### I.   INTRODUCTION

Plaintiff commenced the within action after being denied Supplemental Social Security Income Benefits and Disability Insurance Benefits. Upon review by United States Magistrate Judge Richard A. Lloret, a Report and Recommendation (R&R) was issued affirming the Administrative Law Judge's (ALJ) denial of said benefits. Plaintiff has filed an Objection to the R&R, which is now before this Court for review. For the reasons set forth hereinbelow, Plaintiff's Objection shall be overruled.

### II.  FACTUAL AND PROCEDURAL HISTORY

Marian Lisa Haruch has been unemployed since June 15, 2007, when the IRS closed the office where she worked as a data transcriber. (Admin. R. 41, 173.) On May 17, 2013, Plaintiff filed applications under Title II of the Social Security Act ("The Act") for disability insurance benefits and Title XVI of The Act for supplemental security income. ( Admin. R. 160-165, 172-183.) Plaintiff's disability application alleged she was disabled due to fibromyalgia,

1

supraventricular tachycardia, and degenerative disc disease in the lower back and neck.[1] (Admin. R. 173.) Plaintiff's medical records show a litany of symptoms ranging in varying degrees of severity and length.[2] (Admin. R. 318-320, 371, 446, 513.) As a cumulative result of Plaintiff's impairments, she claims she is unable to work.

On June 10, 2015, the ALJ denied Plaintiff's claim for social security benefits, finding she was not disabled under the definitions set forth in 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920(f). (Admin. R. 22.) The Appeals Council denied Plaintiff's request for appeal on December 28, 2016. (Admin. R. 1-3.) Having exhausted her administrative remedies, Plaintiff brought the instant civil action and pursuant to Local Rule 72.1 and 28 U.S.C. § 636(b)(1)(B), the matter was referred to Magistrate Judge Richard A. Lloret, for preparation of an R&R. Judge Lloret ultimately determined that the ALJ's denial of benefits was a correct disposition. Plaintiff timely filed an Objection to Judge Lloret's R&R and Defendant has responded.

## III.   STANDARD OF REVIEW

Objections to a Report and Recommendation are entitled to *de novo* review. 28 U.S.C. § 636(b)(1)(C).[3] However, the reviewing Court must give deference to the final decision of the

---

[1] Although Plaintiff's application does not reference anxiety, the issue of anxiety was presented to, and considered by, the ALJ. Plaintiff's Objection does not involve any conclusions reached by the ALJ or Magistrate regarding anxiety.

[2] In particular, Plaintiff provides reference to specific medical records documenting eight symptoms associated with fibromyalgia: instances of fatigue (Admin. R. 326, 328, 331, 332, 702), malaise (Admin. R. 330, 333), muscle pain (Admin R. 870), numbness and tingling (Admin R. 731, 739, 743, 772, 803), dizziness (Admin R. 326, 526, 788, 794, 796, 803), depression (Admin. R. 596, 631, 637, 895), abdominal pain (Admin. R. 474, 564, 573, 583), and sleep disturbance (Admin R. 328, 447, 466, 507, 526).

[3] This Court recognizes that although Plaintiff's Objections to Judge Lloret's Report and Recommendation are duplicative of issues raised before the Magistrate Judge, they are nonetheless entitled to *de novo* review. *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011) (clarifying that "any appeal to a district court based on an objection to a Magistrate Judge's order" is subject to *de novo* review even if it rehashes arguments already presented to the Magistrate Judge).

Commissioner of Social Security. As such, this Court is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Jenkins v. Comm'r of Soc. Sec.*, 192 F. App'x 113, 114 (3d Cir. 2006). To determine if substantial evidences exists to support an ALJ's decision, this Court must consider all evidence of record, ***regardless of whether the ALJ cited to it in her decision***. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (emphasis added) (citing *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)). Substantial evidence is difficult to precisely define; it "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Reefer*, 181 F.3d at 397 (quoting *Smith*, 487 at 970). In terms of the traditional burden of proof standards, substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

It is well settled that:

> In order to qualify as disabled, and thus be entitled to benefits, a claimant must demonstrate that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period. A claimant is deemed unable to engage in any substantial gainful activity only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. In reviewing claims for disability benefits, an ALJ performs a five-step analysis to determine whether a claimant is disabled.

*Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 503 (3d Cir. 2005) (internal quotation marks and citations omitted).

For Title II disability claims and Title XVI supplemental security income claims such as this, the ALJ must determine whether the Plaintiff is:

3

> (1) engaged in substantial, gainful activity; (2) has a severe [MDI]; (3) has an impairment that is the same as or equivalent to an impairment listed by the Administration as presumptively precluding any gainful activity; (4) can return to past relevant work despite the impairment; and (5) is capable of perming other work in the national economy.

*Martinez v. Comm'r Soc. Sec.*, 663 F. App'x 191, 193 (3d. Cir. 2016) (citing 20 C.F.R. § 404.1520); *see also McCleary v. Colvin*, 187 F. Supp. 3d 497, 531 (M.D. Pa. 2016) (discussing the five-step, sequential analysis to be utilized by the ALJ when determining eligibility for benefits).

## IV. DISCUSSION

Plaintiff herein raises one Objection for this Court's consideration: whether Judge Lloret erred "by allowing the ALJ's decision to stand when he [sic][4] failed to properly consider Ms. Haruch's fibromyalgia." (Pl.'s Obj. 1.) Upon review of the record, this Court finds that the ALJ's decision is legally sound. The ALJ properly considered the evidence provided by Plaintiff and applied the appropriate legal criteria in determining that Plaintiff's fibromyalgia was not a severe medically determinable impairment ("MDI"). (Admin. R. 18.)

As set forth above, in order to satisfy the second step of the analysis, a plaintiff must demonstrate that he or she has a "severe" medically determinable impairment, or a combination of impairments that meet the definition of "severe" in the Social Security Regulations. 20 C.F.R. § 404.1520(b); § 416.920(b). An impairment is "severe" if it "significantly limits [one's] physical or mental ability to do basic work activities." § 404.1520(b); § 416.920(b).

In an effort to assist ALJs in assessing claims of fibromyalgia, the Social Security Administration promulgated Social Security Ruling 12-2P, which sets forth a procedure for determining if fibromyalgia is a severe MDI for disability purposes. Titles II & XVI: Evaluation

---

[4] The ALJ in this matter was Nadine Overton.

4

of Fibromyalgia, Social Security Ruling (SSR) 12-2p, 2012 SSR LEXIS 1 (S.S.A. July 25, 2012). Under this Ruling, fibromyalgia can be established as a severe MDI if the plaintiff presents "appropriate medical evidence" that satisfies one of two sets of criteria the Social Security Administration adopted from the American College of Rheumatology ("ACR"). 2012 SSR LEXIS 1, at *3-4. Appropriate medical evidence consists of a physician's diagnosis, accompanied by documentation that the physician has "reviewed the person's medical history and conducted a physical exam." 2012 SSR LEXIS 1, at *3. The two sets of criteria used for objectively assessing claims of fibromyalgia are the 1990 ACR Criteria for the Classification of Fibromyalgia (the "1990 Criteria"), and the 2010 ACR Preliminary Diagnostic Criteria (the "2010 Criteria").[5] 2012 SSR LEXIS 1, at *4.

In this case, Plaintiff's medical record contains scattered references to a history of fibromyalgia, along with documentation of various symptoms associated with fibromyalgia.[6] However, a list of symptoms alone, even if provided by a licensed physician, does not necessarily meet the burden of appropriate medical evidence under Social Security Ruling 12-2p. Instead, a plaintiff must supply evidence to adequately demonstrate that no other disorder could have caused these symptoms. 2012 SSR LEXIS 1, at *6-7, 9. Additionally, a treating physician's opinion is only given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the record]." 20 C.F.R. § 404.1527(c)(2).

---

[5] The key difference between the two sets of the criteria involve an evaluation of "positive tender points," versus an evaluation of "repeated manifestations of six or more symptoms, signs, or co-occurring conditions[.]" 2012 SSR LEXIS 1, at *5-8. As such, the 1990 Criteria relies on a finding of 11 out of 18 "tender points" on the body, while the 2010 Criteria allows for a more broad consideration of the symptoms associated with fibromyalgia.
[6] See Supra n. 2.

Here, every symptom Plaintiff lists for the court may be attributed to Plaintiff's: (1) cardiac diagnosis; (2) degenerative disc diagnosis; (3) existence of uterine fibroid and ovarian cyst; and/or (4) side effects from a plethora of medications (on average, nine) that Plaintiff has been taking together on a daily basis. This Court has reviewed all of the medical records and observes that in all of the allegedly symptomatic instances cited by Plaintiff, she was being medically evaluated and/or treated for reasons *other than* fibromyalgia. *E.g.*, cardiac issues (Admin. R. 326, 328, 330-332, 445, 447, 466, 471, 474-75, 507, 524, 526, 702, 705, 772-774, 794, 796, 870); degenerative disc disease (Admin. R. 731, 739, 743, 803); uterine fibroid and ovarian cyst (Admin. R. 474, 475, 564, 573, 583); side effects from medications (Admin. R. 466, 508, 524, 526 598, 633, 788, 899).

Notably, Plaintiff's medical records do not indicate any diagnostic techniques employed with regard to her alleged fibromyalgia, nor do they provide an actual diagnosis of same. The administrative record shows that the symptoms listed in Plaintiff's medical records, as well as the documentation of a history of fibromyalgia, were based solely on Plaintiff's self-reported history of fibromyalgia, and her subjective description of her symptoms as carried over from one visit to the next.[7] Again, Plaintiff presented no evidence to preclude the possibility that her symptoms were caused by another disorder.

When an ALJ determines that the medical evidence is insufficient to conclude that the plaintiff has a severe MDI, the ALJ is required to provide "a clear and satisfactory explication of the basis on which it rests." *Roache v. Colvin*, 170 F. Supp. 3d 665, 669 (D. Del. 2016) (quoting *Fargnoli v. Halter*, 247 F.3d 34, 41 (3d Cir. 2001)). The ALJ must also explain its reasons for the weight given to medical opinions, as well as the degree to which the plaintiff's testimony is

---

[7] The ALJ's holding that Plaintiff's testimony was unreliable further raises the need for proper documentation. (Admin R. 20-21.)

6

credited. 20 C.F.R. § 404.1527(e)(2)(ii); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). The purpose of this requirement is to provide a reviewing court with enough information to conduct a meaningful analysis of the ALJ's decision. *Roache*, 170 F. Supp 3d at 669 (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

Plaintiff herein contends the ALJ improperly and without explanation disregarded evidence documenting the symptoms of fibromyalgia, and failed to consider the 2010 Criteria. (Pl's Obj. 1.) Specifically, Plaintiff argues "...the ALJ's finding that [fibromyalgia] was not 'sufficiently documented' seems to stem from his [sic][8] mistaken reliance on a lack of tender points." (Pl's Obj. 2.) In support of this argument, Plaintiff again relies upon the medical records that contain unrelated references to symptoms associated with fibromyalgia.[9] (Pl's Obj. 2.)

This Court disagrees that the ALJ disregarded evidence of symptoms and did not address the 2010 Criteria. Moreover, Plaintiff's contention that ALJ's explanation is absent from her decision is flatly inaccurate, as evidenced by the record:

> The undersigned notes the claimant made complaints of "whole body pain," and the treating physician suggested fibromyalgia as a *possible* cause of this pain. Fibromyalgia is a disorder defined by the American College of Rheumatology (ACR) and Social Security Administration recognizes it as medically determinable if there are signs that are clinically established by the medical record. The signs are primarily the tender points. The ACR defines the disorder in patients as "widespread pain in all four quadrants of the body for a minimum durations of 3 months and at least 11 of the 18 specified tender points which cluster around the neck and shoulder, chest, hip, knee, and elbow regions." ***Other typical symptoms, some of which can be signs if they have been clinically documented over time, are fatigue, cognitive or memory problems, walking [sic] unrefreshed, depression, anxiety disorder, or irritable bowel syndrome.*** Based on the above-described criteria, the undersigned finds fibromyalgia is not a medically determinable impairment in this case because it has not been sufficiently documented in the medical record ***and other causes for the claimant's symptoms are not ruled out.***

---

[8] *See Supra* n. 4.
[9] *See supra* n. 2.

7

(Admin. R. 18) (emphasis added).

It is well established that "an ALJ [is not required] to adhere to any set format for explaining his analysis so long as there is 'sufficient development of the record and explanation of findings to permit meaningful judicial review.'" *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162 (3d Cir. 2008) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). This Court's review of Social Security Ruling 12-2p in conjunction with the ALJ's decision and the record before her, clearly demonstrates that the ALJ did in fact consider the symptoms listed in the 2010 Criteria; namely, "manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome[.]" 2012 SSR LEXIS 1, at *8. The ALJ also recognized the treating physician's suggestion that fibromyalgia was a "possible cause" of Plaintiff's "complaint of whole body pain"—by no means does this translate to a finding that "the diagnosis was already established[,]" as Plaintiff so contends. (Admin. R. 18; Pl.'s Obj. 3.) As discussed above, both Criteria require a plaintiff to provide evidence that rules out any other cause for the pain. In this case, Plaintiff simply failed to do so.

This Court further recognizes the ALJ's findings regarding Plaintiff's lack of credibility at the hearing,[10] particularly when viewed in conjunction with the medical evidence of record.

---

[10] The ALJ devotes a significant portion of her findings to the issue of credibility. Of particular significance, is the following excerpt:

> The description of the symptoms and limitations which the claimant has provided throughout the record has generally been inconsistent and unpersuasive. For instance, the claimant testified that she has leg pain on most days, but she retains the ability to drive. In addition, she reported having symptoms of poor sleep, social isolation, poor memory, and difficulty focusing and dealing with instructions. However, the claimant has been sleeping on her sister's couch for the last two and a half years, which may be contributing to her sleep issues. What is more, her mental health symptoms are not corroborated by the treatment evidence, as she has sought very limited care. The undersigned additionally

8

(Admin. R. 20-21); *see also Miller v. Comm'r of Soc. Sec.,* 719 F. App'x 130, 134 (3d Cir. 2017) ("ALJ has wide discretion to weigh the claimant's subjective complaints, and may discount them where they are unsupported by other relevant objective evidence.") (internal citation omitted). It is not the function of this Court to question the ALJ's credibility determinations, particularly when her conclusions are supported by substantial evidence of record. *See O'Shea v. Colvin,* Civil Action No. 14-2811, 2015 U.S. Dist. LEXIS 150170, at *4 (E.D. Pa. Nov. 5, 2015) (recognizing the well-established precept that a reviewing court is not permitted to "second guess the ALJ's credibility determination[s].").

With regard to Judge Lloret's assessment, he conducted a thorough review of the evidence (as set forth at length in his R&R), and accurately concluded that while the record contains documentation of eight fibromyalgia symptoms, it "does not... reflect any diagnostic methodology used to conclude that Haruch suffers from fibromyalgia." (R&R 4.) The explanation provided by the ALJ, as well as the assessment of same as provided by Judge Lloret, constitute a sufficient basis for this Court to conduct a meaningful review. Upon said review, this Court concludes that neither ALJ Overton, nor Judge Lloret, erred in their assessments of the evidence in conjunction with appropriate standards. Accordingly, the ALJ's finding that Plaintiff's fibromyalgia was not a severe MDI, was not erroneous.

In view of the foregoing, Plaintiff's contention that ALJ's alleged error regarding fibromyalgia infected the remainder of the disability analysis, is rendered moot. (Pl's Obj. 3-4)

---

> observes that testimony on this issue was elicited from the claimant through blatant leading questions. Furthermore, despite the claimant's allegations of pain, she retains the ability to perform many normal daily activities. Notably, in November 2014, she played laser tag and bowling with her family. These activities are incontinent [sic] with disabling pain. Overall, this evidence diminishes the persuasiveness of the claimant's allegations.

(Admin. R. 21.)

(citations omitted). Because the ALJ determined that the evidence before her did not satisfy the criteria for establishing the existence of fibromyalgia, she was prohibited from considering the functional impact fibromyalgia would have on Plaintiff.[11] Plaintiff's claim that the ALJ failed to "adequately consider Ms. Haruch's fibromyalgia" is simply inaccurate. The ALJ properly considered the record before her and found "fibromyalgia is not a medically determinable impairment" in Plaintiff's case. (Admin. R. 18.) Accordingly, the analysis properly moved forward utilizing the ALJ's findings of cervical and lumbar degenerative disc disease as severe, medically determinable impairments. (Admin. R. 18.)

---

[11] The ALJ correctly found that Plaintiff's cervical and lumbar degenerative disc disease were severe, medically determinable impairments. (Admin. R. 18.)

10

## IV. Conclusion

Upon review of the record *in toto,* this Court finds the ALJ's decision was supported by substantial evidence. In view of the foregoing, Judge Lloret's R&R shall be adopted in its entirety.

An appropriate Order follows.

BY THE COURT:

_____
C. Darnell Jones, II    J.